RECEIVED

MAY 2 8 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

KEEL SCHEXNIDER, ET AL.                    CIVIL ACTION NO. 6:11CV2148

VERSUS                                     JUDGE DOHERTY

KEITH SCHEXNIDER, ET AL.                   MAGISTRATE JUDGE HANNA

## MEMORANDUM RULING

Currently pending before the Court is a motion for summary judgment [Doc. 25] filed by

defendant Keith Schexnider, whereby defendant seeks dismissal of all claims brought against him

by plaintiffs Keel Schexnider and Destiny LeBlanc.[1] For the following reasons, the motion is

---

[1]This Court notes that although the motion presently before the Court involves solely state law claims, the case was removed to this Court on the basis of federal question jurisdiction by defendant, The City of Kaplan. Because no federal question appeared on the face of the complaint, the Magistrate Judge issued a *sua sponte* jurisdictional briefing order [Doc. 20], requiring the removing defendant to set forth its arguments in support of subject matter jurisdiction. The City of Kaplan argued although plaintiffs' initial pleading was not removable, once plaintiffs filed their response to the City of Kaplan's motion for summary judgment in state court alleging violations of their rights under the United States Constitution, the response constituted an "other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). [Doc. 21, pp. 2-3] Thus, according to the City of Kaplan, federal question jurisdiction exists over this matter pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction exists over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Plaintiffs did not submit a brief in response to the Magistrate Judge's *sua sponte* jurisdictional briefing order. Although admittedly a close question, the Magistrate Judge determined jurisdiction exists over this matter by virtue of the allegations made in plaintiffs' response to defendant's motion for summary judgment. [Doc. 24, p. 10]

This Court notes plaintiffs have yet to supplement their complaint to clearly assert a § 1983 claim within the pleadings. A review of the Rule 26(f) report reveals the same - plaintiffs solely address claims arising exclusively under state law. However, as found by the Magistrate Judge, "With the filing of the Memorandum in Opposition to the Motion for Summary Judgment in the instant case, the plaintiffs' claims were more expansively described to unequivocally rely on federal law, and the case became removable based on federal question jurisdiction." [Id.] Nevertheless, plaintiffs' failure to supplement their complaint in light of the Magistrate Judge's Ruling certainly clouds the jurisdictional

DENIED IN PART and DEFERRED IN PART.

## Background

According to the complaint filed in this matter, plaintiff Keel Schexnider and movant (who are brothers) are co-owners of certain immovable property located in Vermilion Parish.[2] [Doc. 1-1, p.2] The property was purchased by their father and mother, as community property, in March of 1996. [Id.] In 2008, plaintiff and movant's mother died intestate. [Id.] Thus, by operation of law, plaintiff and movant's father (Wilson Schexnider) is the owner of an undivided one-half interest in the community property and maintains a usufruct over his deceased spouse's half of the community property; plaintiff and movant, along with their siblings, are the naked owners of their mother's half of the community property in indivision, over which Wilson Schexnider has the usufruct. [Id.]

In April 2008, Wilson Schexnider entered into a verbal lease with plaintiffs, whereby plaintiffs were permitted to live with Wilson Schexnider in the residence located on the immovable property, in exchange for $300.00 per month rent, payment for groceries, and providing care for Wilson Schexnider. [Id. at 2-3] In April 2009, plaintiff Keel Schexnider had a disagreement with his brothers, which resulted in the brothers' "desire[] that . . . [plaintiffs] be required to leave the residence. . . ." [Id. at 3]

---

issue, it would seem. However, jurisdiction is not before the Court by way of the pending motion, nor is the Court, at this juncture, raising jurisdiction *sua sponte*, in light of the determination made by the Magistrate Judge. Whether jurisdiction actually exists given the procedural posture existing in this case at this time, as opposed to the time of removal, is troubling, but this Court is aware of the jurisprudence that jurisdiction is determined at the time of removal. However, should the federal question of a § 1983 claim not be properly before this Court, this Court would be free, within its discretion, to chose to decline jurisdiction over the purely state law claims – however, the present procedural posture does not, it would seem at this juncture, allow for the exercise of that discretion.

[2]All parties agree Keel and Keith Schexnider's siblings (some of whom have been named defendants in this suit) are also co-owners of the property. However, the parties are inconsistent in their identification of the remaining co-owners. [*See e.g.* Doc. 1-1, p.2, ¶ 6; Doc. 25-1, p.1; Doc. 29, p.1, ¶ 2]

On April 11, 2009, the police were called to the residence due to a dispute between Keel, Keith, Ken and Kilson Schexnider. [Id.; *see also* Doc. 25-1, p. 2] According to movant, when the police arrived, movant "informed them he had a valid power of attorney to handle the affairs of his father, Wilson Schexnider, and that he wanted the Plaintiffs to be evicted from the house." [Doc. 25-1, p.2]  Assistant Chief of the Kaplan City Police, Vergie Lemaire, advised the parties plaintiffs "could not be evicted from the premises without a proper notice to vacate and/or filing the appropriate eviction proceedings." [Doc. 1-1, p.3; *see also* Doc. 25-1, p.2]

The following day, the police were again called to the residence. Different police officers were dispatched to the residence than the day before, and Keith, Ken and Kilson Schexnider again asked the officers to evict plaintiffs from the residence. [Id. at 4] According to plaintiffs:

> Despite the absence of a notice to vacate, judgment of eviction, or a warrant directing the proper law enforcement officer to deliver possession of the premises to the lessor or owner, and without establishing who was the owner(s) of the referenced property, on or about April 12, 2009, Kaplan City Police Officer, **RUSTIN COMEAUX** and an unidentified Kaplan City Police Officer forced **KEEL SCHEXNIDER** and **DESTINY LEBLANC** to vacate the premises . . ., and to surrender any keys to the premises that they possessed, under threat of arrest and/or criminal charges.[3]

[Id.] According to the complaint, the above actions were taken without the knowledge or consent of Wilson Schexnider. [Id.] Based upon the foregoing events, plaintiffs have brought claims of "wrongful eviction, invasion of privacy, and intentional infliction of emotional distress" against movant. [Id. at 5]

By way of his motion for summary judgment, movant argues the claims against him should be dismissed, because he "was not involved with the Plaintiffs' allegedly being forced to vacate the

---

[3]Movant, as well as the other brothers named as defendants in this suit, maintain plaintiffs "moved out of the residence voluntarily and were not forced out." [Doc. 25-1, p.3]

residence on April 12, 2009. . . ." [Doc. 25-1, p.3] While movant acknowledges he asked that plaintiffs be evicted on April 11, 2009, he asserts once he was told he could not evict plaintiffs without formal legal process, he left the residence and took no further action to have plaintiffs evicted. [Id.] Movant further asserts, "He did not go to the residence on April 12, 2009, the day the Plaintiffs moved out, and did not send police officers to force the Plaintiffs to vacate the premises on that date." [Id.] While plaintiffs do not dispute movant was not "physically present on the premises on April 12, 2009," plaintiffs argue movant "was indeed constructively present through telephone communications with remaining defendants throughout the forcible removal and that . . . the series of events which culminated in the forcible removal was initiated on April 11, 2009, when Keith Schexnider was, by his own admission, present on the premises and which series of events was at least in part initiated by Keith Schexnider without cause and without authority." [Doc. 27-1, pp. 1-2] Plaintiffs support the foregoing argument by pointing to deposition testimony, wherein Keel Schexnider testifies on April 12, 2009, movant was communicating with his co-defendant brothers by telephone, advising them he wanted plaintiffs evicted, and the brothers were relaying movant's request to the police officers at the scene. [Doc. 25-3, pp. 82, 85; *see also* Doc. 25-4, p.67]

## Analysis

1.     **Wrongful Eviction**

With regard to plaintiffs' claim of wrongful eviction, the Court notes Wilson Schexnider (as owner of one-half of the property, with a usufruct over the remaining half) was the only person with the legal right to lease the property. *See* La. Civ. Code arts. 535, 539, 550-51, and 567. As Wilson Schexnider was the only person who had the authority to lease the property in question, it would seem any claim for "wrongful eviction" must lie against him, however, he has not been named a

party to this suit. Moreover, it seems the claim being asserted, although designated as a claim for "wrongful eviction," is in actuality something else, as there was no "eviction" per se.[4]

In light of the foregoing, within ten (10) days of issuance of this Ruling, plaintiffs are to submit a supplemental brief addressing their claim of "wrongful eviction." Within their brief, plaintiffs are to set forth the elements of a claim for wrongful eviction, provide citations to supporting legal authority, and set forth the facts they assert support their prima facie burden. Defendant may respond to plaintiffs' supplemental brief no later than twenty (20) days after issuance of this Ruling. If the foregoing briefing is not submitted by plaintiffs by the deadline provided, the Court will dismiss plaintiffs' claim of wrongful eviction.

**2.     Invasion of Privacy**

Louisiana recognizes a cause of action for "invasion of privacy," pursuant to La. Civ. Code art. 2315. *Jaubert v. Crowley Post–Signal, Inc.*, 375 So.2d 1386, 1388-89 (La.1979). One of the four ways in which the tort of invasion of privacy may occur is when a person unreasonably intrudes upon the physical solitude or seclusion of another. *Id.* at 1388; *see also Doe v. Southern Gyms, LLC*, 112

---

[4]An action for eviction determines "whether the owner is entitled to possession of the premises." *Capone v. Kenny*, 646 So.2d 510, 512 (La.App. 4 Cir. 1994); *see also* BLACK'S LAW DICTIONARY (9th ed. 2009) (An "eviction" is "[t]he act or process of legally dispossessing a person of land or rental property.") Here, there was no judgment of eviction, nor are plaintiffs asserting they were wrongfully evicted by their landlord. Rather, it appears perhaps plaintiffs are attempting to assert a possessory action, although nowhere is that term used in the pleadings and motions filed. *See* La. Civ. Code art. 3440 ("Where there is a disturbance of possession, the possessory action is available to a precarious possessor, such as a lessee or a depositary, against anyone except the person for whom he possesses."); *see also* La. Civ. Code art. 2700 ("The lessor warrants the lessee's peaceful possession of the leased thing against any disturbance caused by a person who asserts ownership, or right to possession of, or any other right in the thing. In a residential lease, this warranty encompasses a disturbance caused by a person who, with the lessor's consent, has access to the thing . . . .); La. Civ. Code art. 2701 ("The lessor is bound to take all steps necessary to protect the lessee's possession against any disturbance covered by the preceding Article, as soon as the lessor is informed of such a disturbance. If the lessor fails to do so, the lessee may, without prejudice to his rights against the lessor, file any appropriate action against the person who caused the disturbance.")

So.3d 822, 833 (La. 2013). Such claims are analyzed using the traditional duty-risk analysis.[5] *Jaubert* at 1388-89. However, not all invasions of the right to privacy are actionable:

> Even where a right to privacy is found to exist, Louisiana courts have distinguished between invasions of that right which are actionable and those which are not. An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest. For an invasion to be actionable, it is not necessary that there be malicious intent on the part of the defendant. The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake; the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct.

*Id.* at 1389 (footnote and internal citations omitted).

In this matter, movant's sole argument is he was neither present, nor involved, with the incidents which took place on April 12, 2009, and accordingly, "there is no issue of material fact. . . ." [Doc. 25-1, p.6] However, as previously noted, plaintiffs have raised a genuine issue of material fact as to whether movant was involved in the conduct at issue, by pointing to evidence that movant was in communication by telephone with the arresting officers, advising them (through his co-defendant brothers) he wanted plaintiffs evicted from the residence.[6] Accordingly, the motion for summary judgment is denied with regard to plaintiffs' claim of invasion of privacy.

---

[5] Under the duty-risk analysis, a plaintiff must prove: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was the legal cause of plaintiff's injuries; and (5) actual damages. *Westchester Fire Ins. Co. v. Haspel-Kansas Inv. Partnership*, 342 F.3d 416, 419 (5th Cir. 2003)(citing *Pinsonneault v. Merchs. & Farmers Bank & Trust Co.*, 816 So.2d 270, 275-76 (La. 2002)).

[6] To the extent defendant argues a claim for invasion of privacy cannot exist, as a matter of law, without the alleged tortfeasor's actual physical presence at the scene of the alleged tort, he has failed to carry his burden of proof, as he has provided no legal authority in support of any such argument.

3.   **Intentional Infliction of Emotional Distress**

To recover for intentional infliction of emotional distress:

[A] plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

. . . .

The distress suffered must be such that no reasonable person could be expected to endure it. Liability arises only where the mental suffering or anguish is extreme.

. . . .

Liability can arise only where the actor desires to inflict severe emotional distress or where he knows that such distress is certain or substantially certain to result from his conduct. The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like.

*White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991)(internal citations omitted). "[C]ourts require truly outrageous conduct before allowing a claim for intentional infliction of emotional distress even to be presented to a jury." *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1024-25 (La. 2000). Conduct which is merely tortious or illegal does not rise to the level of being extreme and outrageous for purposes of the tort of intentional infliction of emotional distress. *Id.*

Again, in this matter, movant's sole argument is he was neither present, nor involved, with the incidents which took place on April 12, 2009, and accordingly, "there is no issue of material fact. . . ." [Doc. 25-1, p.6] However, as previously noted, plaintiffs have raised a genuine issue of material

fact as to whether movant was involved in the conduct at issue, by pointing to evidence that movant was in communication by telephone with the arresting officers, advising them (through his co-defendant brothers) he wanted plaintiffs evicted from the residence.[7] Accordingly, the motion for summary judgment is denied with regard to plaintiffs' claim of intentional infliction of emotional distress.

### Conclusion

In light of the foregoing, the motion for summary judgment [Doc. 25] is DENIED IN PART and DEFERRED IN PART. The motion is denied to the extent it seeks dismissal of plaintiffs' claims for invasion of privacy and intentional infliction of emotional distress; the motion is deferred to the extent it seeks dismissal of plaintiffs' claim of wrongful eviction.

THUS DONE AND SIGNED in Chambers, ~~Lafayette,~~ Louisiana, this 27 day of May, 2014.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[7]To the extent movant argues a claim for intentional infliction of emotional distress cannot exist, as a matter of law, without the alleged tortfeasor's actual physical presence at the scene of the alleged tort, he has failed to carry his burden of proof, as he has cited no legal authority in support of any such argument.