RECEIVED

AUG - 8 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| KEEL SCHEXNIDER, ET AL. | CIVIL ACTION NO. 6:11CV2148 |
| VERSUS | JUDGE DOHERTY |
| KEITH SCHEXNIDER, ET AL. | MAGISTRATE JUDGE HANNA |

**MEMORANDUM RULING**

Currently pending before the Court is a motion for summary judgment submitted by defendant, The City of Kaplan, whereby defendant seeks dismissal of "all of plaintiffs' claims, with prejudice and at their sole cost."[1] [Doc. 39] For the following reasons, the motion is GRANTED.

**I. Factual Background**

According to the complaint filed in this matter, plaintiff Keel Schexnider, defendants Keith, Ken and Kilson Schexnider, and their father Wilson Schexnider are co-owners of certain immovable property located in Vermilion Parish. [Doc. 1-1, p.2] Wilson Schexnider is the owner of an undivided one-half interest in the property, and Keel, Keith, Ken and Kilson Schexnider are naked owners in indivision of the other one-half interest in the property, subject to their father's usufruct. In April 2008, Wilson Schexnider entered into a verbal lease with plaintiff Keel Schexnider and his girlfriend, plaintiff Destiny LeBlanc, whereby plaintiffs were permitted to live with Wilson Schexnider in the residence located on the immovable property, in exchange for $300.00 per month rent, payment for groceries, and providing care for Wilson Schexnider. [Id. at 2-3]

---

[1] Former Chief Perry and Officer Comeaux were dismissed from this suit, prior to its removal to this Court.

Page 1 of 16

On April 11, 2009, the Kaplan police were called to the residence due to a dispute between Keel, Keith, Ken and Kilson Schexnider. [Id.] According to the complaint, Keith, Ken and Kilson Schexnider "desired that Keel Schexnider and Destiny Leblanc be required to leave the residence. . . ." [Id. at 3 (emphasis omitted)] Assistant Chief of the Kaplan City Police, Vergie Lemaire, advised the parties plaintiffs "could not be evicted from the premises without a proper notice to vacate and/or filing the appropriate eviction proceedings." [Doc. 1-1, p.3]

The following day, the police were again called to the residence. Different police officers were dispatched to the residence than the day before, and Keith, Ken and Kilson Schexnider "requested that Kapan police officers force [plaintiffs] to vacate the residence. . . ." [Id. at 4] According to plaintiffs:

> Despite the absence of a notice to vacate, judgment of eviction, or a warrant directing the proper law enforcement officer to deliver possession of the premises to the lessor or owner, and without establishing who was the owner(s) of the referenced property, on or about April 12, 2009, Kaplan City Police Officer, Rustin Comeaux and an unidentified Kaplan City Police Officer forced **KEEL SCHEXNIDER** and **DESTINY LEBLANC** to pack their clothing, belongings, and minor children's toys in boxes and did remove them from the residence. . . .

[Id. (emphasis omitted)] Plaintiffs additionally allege the Kaplan police officers forced them "to vacate the premises . . ., and to surrender any keys to the premises that they possessed, under threat of arrest and/or criminal charges." [Id.] According to the complaint, the above actions were taken without the knowledge or consent of Wilson Schexnider. [Id.]

Based upon the foregoing events, plaintiffs brought claims of "wrongful eviction, abuse of right, unreasonable and arbitrary exercise of discretion to arrest, negligent infliction of emotional distress, defamation, and invasion of privacy" against the City of Kaplan, former Chief of Kaplan Police Stephen Perry, and Officer Rustin Comeaux in state court. [Id. at 5] The City of Kaplan

removed the case to this Court on the basis of federal question jurisdiction.[2] Former Chief Perry and Officer Comeaux were dismissed from this suit, prior to its removal to this Court. [Doc. 1-1, p.41] Accordingly, the only defendants remaining in this matter are Keith, Ken and Kilson Schexnider, and the City of Kaplan, movant herein.

## II. Applicable Law and Analysis

### A. Federal claims[3]

The City of Kaplan argues plaintiffs' remaining claims, asserted pursuant to 42 U.S.C. § 1983 (for violation of their "right to due process and privacy") must be dismissed for the following reasons: (1) "liability cannot be imputed upon the City for the actions of individual officers under *Monell v. Department of Social Services*, 436 U.S. 658 . . . (1978)"; (2) "no individual Kaplan police officers are left in the lawsuit as parties"; and (3) assuming *arguendo*, "defendant *could* be liable, plaintiffs' claims still fail based upon the facts of this case." [Doc. 39-9, pp. 10, 11 (emphasis in original)]

---

[2] More specifically, the City of Kaplan removed this matter in light of plaintiffs' response to a motion for summary judgment filed by the City of Kaplan in state court, wherein plaintiffs asserted, for the first time, that the City of Kaplan (as well as the individual police officers) violated their rights under the United States Constitution. The Magistrate Judge determined jurisdiction exists over this matter, as the allegations in plaintiffs' response to defendant's motion for summary judgment constituted an "other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) [Doc. 24, p.10]

[3] Although no federal claims are asserted in the complaint, "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(2). This rule applies at the summary judgment stage, as well as at trial. *See, e.g., United States ex rel. Canion v. Randall & Blake*, 817 F.2d 1188, 1193 (5th Cir.1987). "Thus, when 'both parties squarely address[ ] [a claim] in their summary judgment briefs,' it may be argued that the complaint was constructively amended." *Handzlik v. United States*, 93 Fed.Appx. 15, 17 (5th Cir.2004)(emphasis in original) (quoting *Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663 (7th Cir.1998)).

"Municipal liability for civil rights violations under § 1983 is based on causation rather than *respondeat superior.*" *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008)(citing *Monell* at 692). "The fact that a tortfeasor is an employee or an agent of a municipality is therefore not sufficient for city liability to attach; the municipality must cause the constitutional tort, which occurs 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Id.* (quoting *Monell* at 694). Municipal liability under § 1983 requires "proof of three elements in addition to the underlying claim of a violation of rights: 'a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom.'" *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 748 (5th Cir. 2005)(quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

"An 'official policy' is either a policy statement, ordinance, regulation, etc., that has been officially adopted by a policymaker, or a persistent, widespread practice of officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipality's policy." *Cox* at 748. In this matter, plaintiffs allege the latter. "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997). "The policymaker must have either actual or constructive knowledge of the alleged policy." *Cox* at 748-49.

Plaintiffs argue there were several alternative courses of action the Kaplan police officers could have taken which, according to plaintiffs, would not have violated their constitutional rights.[4] [Doc. 43, pp. 4-5] Plaintiffs additionally argue the City of Kaplan "officially sanctioned and approved the conduct of the officers," because "when Kilson approached former Chief Perry with worries about having been named in this lawsuit, Chief Perry told Kilson that he was not concerned about Plaintiffs' claims and that Kilson had no reason to be either."[5] [Id. at 5-6] Finally, plaintiffs argue defendant "admits an official policy and/or custom favoring the conduct at issue herein," because in that portion of defendant's brief addressing plaintiffs' "abuse of right" claim, the City argues the police officers' motive on the day in question was to ensure the safety of themselves and all parties at the scene. [Doc. 43, p. 6 ("In it's own memorandum in support of its motion for summary judgment, the City admits an official policy and/or custom favoring the conduct at issue herein. The City very clearly and plainly maintains that the police officers properly exercised their enforcement power in a manner consistent with the City's policies and the reasons the City affords them the same: to protect the safety of the parties present.")]

In short, plaintiffs have asserted no facts upon which to base municipal liability. They identify no "widespread practice of officials or employees . . . [that] is so common and well settled

---

[4]Specifically, plaintiffs assert the officers "could have contacted Wilson Schexnider to inquire as to his actual wishes," the officers "could have required the non-resident co-defendants without any demonstrable right to be on the premises to move on," or the officers could have arrested the co-defendants for trespassing. [Doc. 43, pp. 4-5]

[5]To the extent plaintiffs are attempting to argue Chief Perry "ratified" the officers' conduct, they have failed to carry their burden of proof. The ratification theory of municipal liability is only available in "'extreme factual situations.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009)(quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)). This is not one of those "extreme factual situations" applicable to the theory of ratification. *See id*; *see also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010)("Good faith statements made in defending complaints against municipal employees do not demonstrate ratification.")

as to constitute a custom that fairly represents the municipality's policy." *Cox* at 748. Indeed, plaintiffs assert the day prior to the incident sued upon, Assistant Chief of the Kaplan City Police, Vergie Lemaire, advised the Schexniders plaintiffs "could not be evicted from the premises without a proper notice to vacate and/or filing the appropriate eviction proceedings." [Doc. 1-1, p.3] This fact alone undercuts plaintiffs argument that the City of Kaplan had adopted *an official policy* which caused violations of citizens' rights to due process or privacy. At best, plaintiffs argue that certain individual Kaplan police officers deprived them of certain constitutional rights, but the officers are no longer parties to this suit, and the municipality cannot be held liable on a theory of *respondeat superior* standing alone. *Bolton* at 548. Accordingly, plaintiffs' claims against the City of Kaplan, brought by way of 42 U.S.C. § 1983, are dismissed. *See e.g. Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850-51 (5th Cir. 2009)("It is thus clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case'")(quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001)).[6]

### B. State Law Claims

#### 1. Unreasonable and Arbitrary Exercise of Discretion to Arrest

Defendant argues plaintiffs' claim for "unreasonable and arbitrary exercise of discretion to arrest" must be dismissed, because: (1) plaintiffs were not arrested, and (2) Louisiana law does not

---

[6]To the extent plaintiffs' attempt to assert a claim for an "unreasonable seizure" in violation of their Fourth Amendment rights within their opposition memorandum, that claim fails for the same reasons as cited above - namely, plaintiffs have failed to identify any official policy that caused the alleged constitutional violations. [Doc. 43, pp. 7-9] Additionally, any such claim was not raised in the complaint, but rather, has been raised for the first time in response to the City of Kaplan's motion for summary judgment. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Board of Sup'rs of Louisiana State University*, 429 F.3d 108, 113 (5th Cir. 2005).

recognize a civil cause of action for "unreasonable and arbitrary exercise of discretion to arrest." [Doc. 39-9, pp. 16-17] In response, plaintiffs argue, "In a civil proceeding, such misconduct [i.e. use of threat of arrest to coerce or compel consent, if it results in actual harm, is actionable under Louisiana Civil Code Article 2315 which states: 'Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.'" [Doc. 43, p. 11]

The Court finds plaintiffs have failed to carry their burden to show Louisiana law recognizes a civil tort claim for "unreasonable and arbitrary exercise of discretion to arrest." Alternatively, the Court finds that, even if Louisiana law were to recognize such a civil tort claim, without an actual arrest, the claim must fail.[7] Accordingly, plaintiffs' claim for "unreasonable and arbitrary exercise of discretion to arrest" is dismissed.

### 2. Negligent Infliction of Emotional Distress

"A claim for negligent infliction of genuine and serious emotional distress is a viable claim in Louisiana." *Brown v. City of Monroe*, 135 So.3d 792, 796 (La.App. 2 Cir. 2014)(citing *Moresi v. State Dept. of Wildlife and Fisheries*, 567 So.2d 1081 (La. 1990)); *see also Dennis v. Wiley*, 22 So.3d 189, 194 (La.App. 1 Cir. 2009); *Lester v. Exxon Mobil Corp.*, 120 So.3d 767, 774 (La.App. 4 Cir. 2013); *Page v. Benson*, 101 So.3d 545, 554-55 (La.App. 3 Cir. 2012). "Recovery for mental

---

[7]The only civil case which this Court has located involving a claim for "unreasonable and arbitrary exercise of discretion to arrest" is *O'Brien v. Town of Glenmora*, 997 So.2d 753 (La.App. 3 Cir. 2008). That case held because a police officer had probable cause for the arrest of a driver for the felony offense of public intimidation, the driver could not maintain a claim for unreasonable and arbitrary exercise of discretion to arrest. All other cases this Court has located addressing this concept are criminal cases. *See e.g. State v. Harris*, 916 So.2d 284, 289 (La.App. 5 Cir. 2005)(granting motion to suppress on the basis that "an officer's exercise of the discretion to arrest for a minor misdemeanor offense must be reasonable rather than arbitrary"); *State v. Guidry*, 442 So.2d 1251, 1253-54 (La.App. 5 Cir. 1983)(denial of motion to suppress affirmed where decision to arrest for traffic violation was not arbitrary, as defendant's reckless behavior posed a danger to life and property and indicated a need for custodial supervision); *State v. Roche*, 928 So.2d 761, 767 (La.App. 5 Cir. 2006).

anguish or emotional distress is based on La. C.C. art. 2315, which provides in part that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." *Id.*; *see also Dennis* at 194; *Page* at 554. "Courts use the duty-risk analysis to determine recovery under article 2315." *Id.*; *see also Dennis* at 194; *Page* at 554. Recovery for claims of negligent infliction of emotional distress, unaccompanied by physical injury, is limited to cases involving the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Moresi v. State, Department of Wildlife and Fisheries*, 567 So.2d 1081, 1096 (1990); *see also Barrino v. East Baton Rouge Parish School Bd.*, 697 So.2d 27, 34 (La.App. 1 Cir. 1997).

Defendant argues this claim should be dismissed, because "plaintiffs cannot show that any mental anguish suffered by them was genuine and serious." [Doc. 39-9, p.18] According to defendant, "Keel Schexnider testified that he has not been to any mental health counselor, social worker, priest or other religious [sic] for counseling, and that he hasn't sought any kind of mental health counseling at all since this incident." [Id. at 18-19 (internal citation omitted)] The only statement of plaintiff potentially addressing defendant's argument with regard to Keel Shexnider is the following: "Additionally, Louisiana law recognizes that emotional distress is often one of the damages likely to occur in this type of situation. *See Vial v. South Central Bell Telephone Co.*, 423 So.2d 1233, (La. App. 5 Cir. 1982). . . ." [Doc. 43, p. 13]

The Court finds the *Vial* case to be distinguishable. *Vial* addressed damages for mental anguish in trespass actions and while the court recognized such damages are available in a trespass action, it also noted "minimal and normal worry and inconvenience is not compensable." *Id.* at 1239. Furthermore, the *Vial* court held such damages were available in that case, because "the trespass

[was] a continuing nuisance." *Id.* As the claim at issue is not a claim for trespass, nor do the allegations constitute a "continuing nuisance," the Court finds the *Vial* case to be inapplicable to plaintiffs' claim for negligent infliction of emotional distress.

With regard to Destiny Leblanc, defendant notes Ms. Leblanc was already being treated "by a psychiatrist for six to seven years, **prior to the incidents at issue,** to treat her bipolar disorder." [Doc. 39-9, p. 19 (internal citation omitted; emphasis in original)] Defendant notes prior to the incident, Ms. Leblanc saw her psychiatrist every three to six months, and after the incident, "she testified that she increased her visits to once a month until her medication was stabilized." [Id. (internal citation omitted)] According to defendant, "Even if her increased visits were due in whole or in part to this incident, once-a-month visits to a psychiatrist in order to treat a serious mental disorder she had been fighting for six or seven years does not constitute serious mental anguish." [Id.] Defendant further argues Ms. Leblanc "has no medical evidence that her alleged increased visits were caused by the incident which forms the basis of the claims at issue." [Id.] In support, defendant cites to the medical records contained in Ms. Leblanc's Social Security Administration disability determination file. [Id.] Defendant notes those records show "no psychological symptoms causally related to the incident alleged in this lawsuit or an increase in visits," and additionally notes those records show "her psychological stressors pertained to her ex-husband, child support issues, an abusive mother, and an addicted father, **not** the incident made the basis of this lawsuit, which is not even mentioned." [Id. (emphasis in original)]

In response, counsel for plaintiff argues the medical records cited by defendant "indicate that prior to the incident, Destiny was stable, her condition indicated as 'intact.'" [Doc. 43, p.12] According to plaintiffs' counsel, three and a half months after the incident, the medical records

indicate Ms. Leblanc's condition had deteriorated. [Id.]

Counsel for plaintiff is incorrect. There are no medical records cited to this Court pre-dating the incident at issue. The record plaintiff relies upon to show plaintiff's condition was intact *prior* to the incident forming the basis of this suit is dated April 28, 2009, which is sixteen days *after* the incident at issue. Accordingly, sixteen days *after* the incident, plaintiff's medical records indicate her medical condition was "intact." Therefore, the Court agrees with defendant - there is no indication in the medical records that the incident forming the basis of this suit had any bearing on plaintiff's mental health. In light of the foregoing, the Court finds plaintiffs have not carried their burden to show this case involves an "especial likelihood of genuine and serious mental distress, arising from [] special circumstances," and accordingly, their claim for negligent infliction of emotional distress is dismissed.

### 3. Defamation

Defendant argues plaintiffs' defamation claim must be dismissed, because they have no evidence showing a defamatory statement was ever made. [Doc. 39-9, p. 20] Plaintiffs do not address defendant's allegation of lack of evidence and argument in their motion or in their memorandum in opposition to defendant's motion for summary judgment. Accordingly, plaintiffs have failed to meet the defendant's evidence and argument in a properly filed and supported motion and, therefore, defendants must prevail, or plaintiffs' claim for defamation has been abandoned. *See* Fed. R. Civ. P. 56(e); *see also Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002); *Criner v. Texas–New Mexico Power Co.*, 470 Fed.Appx. 364, 367-68 (5th Cir. 2012).

### 4. Invasion of Privacy

Plaintiffs assert a claim for invasion of privacy, pursuant to La. Civ. Code art. 2315. [Doc.

43, p. 13] "The tort of invasion of privacy is directed at redressing the damage which an individual suffers when legally recognized elements of his right to privacy have been violated." *Tate v. Woman's Hosp. Foundation*, 56 So.3d 194, 197 (La. 2011). One of the four ways in which the tort of invasion of privacy may occur is when a person unreasonably intrudes upon the physical solitude or seclusion of another.[8] *Jaubert v. Crowley Post–Signal, Inc.*, 375 So.2d 1386, 1388–89 (La.1979); *see also Doe v. Southern Gyms, LLC*, 112 So.3d 822, 833 (La. 2013). Such claims are analyzed using the traditional duty-risk analysis. *Jaubert* at 1388–89. To state a claim for invasion of privacy, "the situation or activity which is intruded upon must be private. . . ." *Jaubert* at 1388. "Where no such right to privacy exists, however, a person's conduct may be the cause of another person's embarrassment, discomfiture, or monetary loss, but it will not constitute a 'legal cause,' because no duty has been breached." *Jaubert* at 1389.

Not all invasions of the right to privacy are actionable:

> Even where a right to privacy is found to exist, Louisiana courts have distinguished between invasions of that right which are actionable and those which are not. An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest. For an invasion to be actionable, it is not necessary that there be malicious intent on the part of the defendant. The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake; the plaintiffs interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct.

*Id.* at 1389 (footnote and internal citations omitted)

---

[8]Invasion of privacy additionally occurs: by appropriating an individual's name or likeness; by giving publicity which unreasonably places a person in a false light before the public; and by unreasonable public disclosure of embarrassing private facts. *Tate* at 197 (citing *Jaubert* at 1388-89).

Defendant argues this claim should be dismissed, for the following reasons:

> Keel Schexnaider [sic] claims that his right to privacy was violated because the Kaplan Police offers 'went in [his] room and carried [his] clothes outside.' . . . If we accept plaintiff's recitation of the facts, the Kaplan Police officers carried boxes of plaintiff's belongings from his residence to his vehicle. They did not open the boxes and show anyone the contents, they did not spill his personal items on the front lawn, they did not announce any embarrassing items they found, and they did not call or tell anyone anything about the incident. . . . Plaintiff Keel Schexnider admits he stopped moving the boxes because his brother were [sic] photographing him moving the boxes and he was afraid that those photographs would hurt his chances of obtaining social security disability. Destiny LeBlanc could not move the boxes because of her previous back injury for which she had surgery. If the plaintiffs did not move the boxes who would? The officer did [sic] to de-escalate the situation. Clearly, plaintiffs have no claim for invasion of privacy, and this claim should be dismissed as a matter of law.

[Doc. 39-9, pp. 21-22 (internal citations omitted)] Thus, it appears defendant argues its officers did not breach any duty they may have owed to plaintiffs.

The only reference the Court has located within plaintiffs' brief addressing this claim reads as follows:

> Plaintiffs were physically evicted from the residence they were lawfully in possession of. Such eviction/dispossession was unlawful and wrongful. Louisiana law maintains that a party who unlawfully interferes with another's lawful possession is liable in damages. Whether those damages are awarded in trespass or wrongful eviction or invasion of privacy, the wrong remains the same and the liability remains the same. In the instant case, the City must bear at least some responsibility for that unlawful eviction/dispossession. The police officer's improper conduct caused harm to Plaintiffs; as such, the City is bound to repair the same. La. C.C. art. 2315.

[Doc. 43, p. 13]

Plaintiffs have presented only argument not supported by evidence or jurisprudence and such unsupported argument is not sufficient to meet a properly supported motion for summary judgment. Consequently, plaintiffs have failed to meet their burden of showing summary judgment on this claim is unwarranted. Additionally, *plaintiffs called the Kaplan police to their residence* to address

a disturbance *they were a part of*, and *once summoned by plaintiffs*, the Kaplan police responded, arrived, and once on the scene, argue they acted in and for the benefit and the safety of all - accordingly, plaintiffs have not shown the police intruded or that the situation or activity, where plaintiffs summoned the police to their residence, involved was private, *Jaubert* at 1388, and thus, plaintiffs' claim for invasion of privacy must fail and, therefore, is dismissed.

5.   **Abuse of Right**

"[T]he doctrine of abuse of rights has been invoked sparingly in Louisiana." *Massachusetts Mut. Life Ins. Co. v. Nails*, 549 So.2d 826, 828 (La. 1989). "The doctrine is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights." *Id.* "In its origin, the abuse of rights doctrine was applied to prevent the holder of rights or powers from exercising those rights exclusively for the purpose of harming another, but today most courts in civil law jurisdictions will find an act abusive if the predominant motive for it was to cause harm." *Illinois Cent. Gulf R. Co. v. International Harvester Co.*, 368 So.2d 1009, 1014 (La. 1979); *see also Insulation Technologies, Inc. v. Industrial Labor and Equipment Services, Inc.*, 122 So.3d 1146, 1151 (La.App. 4 Cir. 2013)("The principle is essentially that 'fault' in the delictual sense can be imposed upon a party who attempts to exercise a legal right with the primary intention of harming or imposing a detriment upon another.")

Under Louisiana law, a plaintiff may recover under the abuse of rights doctrine only where one of the following conditions is met: (1) rights were exercised for the predominant purpose of harming another; (2) there was no legitimate motive for exercise of the right; (3) exercise of the right violates moral rules, good faith, or elementary fairness; or (4) rights were exercised for a purpose other than that for which they were granted. *Truschinger v. Pak*, 513 So.2d 1151, 1154 (La. 1987);

*Slimp v. Sartisky*, 100 So.3d 901, 907, n.3 (La.App. 4 Cir. 2012). The abuse of rights doctrine typically applies in cases implicating contractual or property rights.

Defendant asserts this claim should be dismissed, arguing as follows:

> Clearly, police officers have a right to control the scene to which they are called. . . . First, it is clear that the officer's motive was not to cause harm. In fact, Keel Schexnaider [sic] himself characterized the officer's moving of the boxes as being done 'for me,' signifying the officer was simply helping to resolve the situation.[9] Second, the officer's motive for exercising his right to control the situation was a legitimate one. This was the second time in two days that the Kaplan Police had been called to this residence due to a family dispute. There were multiple family members involved in a dispute over property, a situation which could have easily escalated had the officers not been there to take control and diffuse the situation. Their motive was safety, their own and that of everyone present. Third, there is nothing about the facts involved here which would make a reasonably moral person uncomfortable such that it violates moral rules, good faith, or elementary fairness. The officer's actions of moving some previously packed boxes, for individuals who could not or would not do so on their own and allegedly getting the homeowner's key clearly do not amount to this standard. Fourth, the purpose for which officer's are given control of a situation is the same as their motive: safety, which is the exact reason they exercised the right.

[Doc. 39-1, pp. 22-23 (internal citations omitted)]

Defendants have carried their burden to support their argument this claim should be dismissed; plaintiffs do not specifically address this claim in their opposition memorandum, and, therefore, plaintiffs have not met their burden of response. Consequently, defendant's motion must prevail for failure to meet their burden to respond to a properly supported motion for summary judgment or by way of abandonment. Fed. R. Civ. P. 56(e); *Keenan* at 262; *Criner* at 367-68.

---

[9]Plaintiff Keel Schexnider testified when the officers arrived at the scene, because plaintiff's belongings were in boxes, Officer Comeaux told him, "That means you voluntarily [sic] moving out." [Doc. 39-1, p. 43] Plaintiff testified he told Officer Comeaux he "wasn't moving nothing." [Id. at 42] He additionally testified his brothers, Ken and Kilson, "were taking pictures of me like they were going to call social security and show social security I was carrying boxes, so I told them I wasn't touching nothing. That's when the Kaplan Police Department went in the house and carried boxes outside for me." [Id. at 42-43]

Additionally, plaintiffs' allegations, on their face, do not constitute an abuse of rights. There is no allegation the police officers or the City of Kaplan acted predominantly to harm plaintiffs, or that they had no legitimate motive, or that they acted against moral rules, good faith, or elementary fairness. Rather, defendants argue and support their position that the officers acted with an eye toward and in benefit of the safety of all involved - and given the absence of evidence to the contrary by plaintiffs and on the face of defendant's motion, this Court finds plaintiffs' claim must fail.

### 6. Wrongful Eviction

Defendants present a properly supported argument plaintiffs' claim for wrongful eviction must fail; plaintiffs do not address a claim for wrongful eviction in their opposition memorandum. For the reasons provided in this Court's previous ruling issued May 28, 2014 [Doc. 33, pp. 4-5], the Court finds plaintiffs cannot maintain a claim for "wrongful eviction" under the facts alleged in this matter.

Additionally, the Court notes that while the result of plaintiffs having called the police to their residence likely was not that which they desired, once summoned by plaintiffs to their residence, the Kaplan police argue they acted not to enforce eviction, but out of concern for the safety of all. Without evidence presented by plaintiffs to dispute the supported motion of defendant, this Court cannot find a genuine issue of material fact exists, and without jurisprudence to support the, otherwise, rather amorphous claim, this Court finds plaintiffs, also, have failed to present legal support for their claims.

### III. Conclusion

Defendants have filed a motion for summary judgment properly supported by both fact and law arguing the claims remaining before this Court should be dismissed, thus plaintiffs now have

the burden to meet those facts and legal argument; plaintiffs have failed to do so.

In light of the foregoing, plaintiffs claims asserted against the City of Kaplan are DISMISSED in their entirety, with prejudice.

THUS DONE AND SIGNED in Chambers, Lafayette, ~~Louisiana~~, this __8__ day of August, 2014.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE
Page 16 of 16